**Appeal No. 14-4354**

---

**IN THE UNITED STATES COURT OF APPEALS FOR THE FOURTH JUDICIAL CIRCUIT**

---

**NESTOR GUERRA TELON,**

**Appellant,**

**DISTRICT COURT CRIMINAL ACTION FILE NO.: 6:13-cr-00631 HMH 5**

**v.**

**United States of America.**

**Appellee.**

---

**ON APPEAL OF AN FINAL JUDGMENT OF THE U.S. DISTRICT COURT FOR THE DISTRICT OF SOUTH CAROLINA**

---

**APPELLANT'S BRIEF**

---

Jerome Lee, Esq.
Georgia Bar No.: 443455

TAYLOR LEE & ASSOCIATES, LLC
6855 Jimmy Carter Boulevard, Suite 2150
Norcross, Georgia 30071
(770) 650-7200 (Telephone)
(678) 735-4512 (Facsimile)

ATTORNEYS FOR APPELLANT

# TABLE OF CONTENTS


| SECTION | PAGE |
|---|---|
| Table of Citations | 2 |
| Statement of Jurisdiction | 3 |
| Statement Regarding Oral Argument | 3 |
| Statement of Issues | 4 |
| Statement of Facts | 4 |
| Statement of the Case | 5 |
| Standard of Review | 5 |
| Summary of the Argument | 6 |
| Argument and Citation of Authority | 7 |
| Conclusion | 17 |
| Certificate of Service | 18 |
| Certificate of Compliance | 19 |

## TABLE OF CITATIONS


| AUTHORITY | PAGE |
|---|---|
| United States v. Green, 436 F.3d 449 (4th Cir. 2006) | 6 |
| Gall v. United States, 552 U.S. 38 (2007) | 7 |
| United States v. Mendoza-Mendoza, 597 F.3d 212 (4th Cir 2010) | 8 |
| United States v. Strieper, 666 F.3d 288 (4th Cir. 2012) | 8 |
| United States v. Slade, 631 F.3d 185 (4th Cir. 2011) | 8, 12 |
| United States v. Harvey, 532 F.3d 326 (4th Cir. 2008) | 9 |
| United States v. Bell, 667 F.3d 431 (4th Cir. 2011) | 9 |
| United States v. Uwaeme, 975 F.2d 1016 (4th Cir. 1992) | 10 |
| United States v. Wilkinson, 590 F.3d 259 (4th Cir. 2010) | 10 |
| U.S. v. Johnson, 943 F.2d 383 (4th Cir. 1991) | 12 |
| United States v. Akinkoye, 185 F.3d 192 (4th Cir. 1999) | 13 |
| United States v. Pratt, 239 F.3d 640 (4th Cir. 2001) | 13, 16 |
| United States v. Fells, 920 F.2d 1179 (4th Cir. 1990) | 14 |
| United States v. Saenz, 623 F.3d 461 (7th Cir. 2010) | 15 |

## STATEMENT OF JURISDICTION

**District Court:**

The district court had subject matter jurisdiction as the underlying criminal indictment was brought pursuant to federal law.

**Court of Appeals:**

Appellants appeal, *inter alia*, the district court's entering of judgment against him on a federal criminal indictment. This Court has jurisdiction to hear appeals of final orders from the district court pursuant to 28 U.S.C. §1291.

**Filing Dates:**

The district court sentenced the Appellant on April 21, 2014. The Notice of Appeal was filed on April 29, 2014.

**Finality:**

This appeal is of the final order entering judgment against the Appellant on a federal criminal indictment.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant does not request oral argument because the alleged errors relate to sentencing calculations and are relatively straightforward.

## STATEMENT OF THE ISSUES

1) Did the district court err in its determination of the quantity of drugs attributable to the Appellant?

2) Did the district court err in its determination that the Appellant did not merit a role deduction?

## STATEMENT OF THE FACTS

Sometime in January of 2013, the Appellant, who is a taxi driver, met an individual named Oscar Alcides Mendez ("Mendez") at a night club in Atlanta. Shortly thereafter, the Appellant began providing taxi services to Mendez on a regular basis in the Atlanta area, and eventually, the Appellant began transporting Mendez to Greenville, South Carolina where he would go see his "mistress", Maria Barquiero Jass ("Jass"), and sometimes take her items – e.g., televisions and book bags. See D.A. 184 Jury Trial Transcript Volume 1 at 82, 86, and 87.

Simultaneously, in March of 2013, federal agents in South Carolina received a tip from an informant regarding a large scale drug dealer operating in and around Greenville South Carolina named "Compa Pintor", or Gadiel Nolasco Ramos ("Ramos"). The agents, with the assistance of the informant, made contact with Ramos, and placed an order for about 2.5 kilograms of cocaine to be delivered on June 6, 2013 in Greenville, South Carolina. On June 6, 2013, the Appellant drove Mendez

to Greenville, South Carolina so he could rendezvous with Jass, and ultimately, Ramos. Once the parties to the transaction converged in Greenville, the federal agents intercepted them, and arrested the Appellant, Ramos, Jass, and Mendez for conspiracy to traffic in cocaine. See Pre-Sentencing Report at ¶19-25, 28.

## STATEMENT OF THE CASE

On September 11, 2013, the government indicted the Appellant on a single count of conspiracy to traffick in a controlled substance (cocaine) in violation of 21 U.S.C. §841. See D.A. 72 Superseding Indictment. After pleading not guilty, the Appellant went to trial. At trial, Jass testified against the Appellant, and succintly, stated that (i) the Appellant drove Mendez to Greenville approxiamately 17 times to consummate drug transactions with her, including the June 6th transaction, (ii) each transaction ranged in size from about nine ounces to half a kilogram; (ii) the Appellant knew why Mendez came to Greenville because he had overheard conversations between her and Mendez, and because he sometimes made deliveries of concealed drugs without Mendez (e.g., in suitcases, book bags, and once, in a television); and (iii) she recalled a specific incidence wherein the Appellant delivered about 0.5 kilograms of cocaine to her in a television. Conversely, the Appellant testified at trial, and denied that he participated in any conspiracy to traffick drugs, and that he had

only come to Greenville with Mendez on a few occasions. See D.A. 184 Jury Trial Transcript Volume 1 at 87-97, 103.

## STANDARD OF REVIEW

When reviewing a district court's application of the Sentencing Guidelines, this Court reviews findings of fact for clear error. United States v. Green, 436 F.3d 449, 456 (4th Cir. 2006)

## SUMMARY OF ARGUMENT

The district court made several errors during the calculation of the Appellant's sentencing guideline range. First, in calculating the drug quantity under 2D1.1, the district court failed to make a determination based on the evidence presented at trial. Specifically, given that the jury convicted the Appellant on a lesser included offense, the evidence presented at trial only permits three, discrete factual outcomes regarding drug quantity – (i) the government seized 2.5 kilograms of cocaine from the drug transaction consummated on the day that the government arrested the Appellant, (ii) Jass testified that the Appellant made approximately 15 (17 total trips, but not counting those made for the sale to government agent) trips to Greenville, each time bringing between 9 ounces (approximately 0.255 kilograms) and 0.5 kilograms of cocaine, and (iii) Jass specifically recalled one of the aforementioned trips wherein the Appellant brought about 0.5 kilograms in a television set. Nevertheless, the district

court held the Appellant responsible for a drug quantity between 3.5 kilograms and 5 kilograms – which is an impossible outcome, without arbitrarily reducing the quantity of drugs transported by the Appellant on the 15 trips to Greenville testified to by Jass. If the district court believed Jass's testimony regarding the 15 trips, then the appropriate drug quantity is more than 5 kilograms; if the district court does not believe the Jass testimony, then the appropriate amount is 3 kilograms, or a Level 28 – in either event, the Sentencing Guidelines require the district court to make a clear set of findings regarding its basis for the drug quantity attributable to a defendant.

Moreover, the district court erred in concluding that the Appellant did not merit a minor role reduction when the evidence at trial indicated otherwise, in that (i) the government's own witnesses characterized the Appellant as a courier; Mendez referred to the Appellant only as "Taxi" in his cell phone; and (iii) throughout the trial, the evidence repeatedly highlighted the Appellant in the role of transporter. Nevertheless, the district court held that the Appellant did not qualify for minor role adjustment, even though there was no evidence that the Appellant did anything other than transport drugs.

## ARGUMENT AND CITATION OF AUTHORITY

This Court reviews criminal sentences for reasonableness, applying an abuse of discretion standard. Gall v. United States, 552 U.S. 38, 51 (2007). In so doing, this

Court "must first ensure that the district court committed no significant procedural error," such as improperly calculating the advisory Sentencing Guidelines range, failing to consider the 18 U.S.C. § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence. Id. If a sentence is procedurally reasonable, it is then examined for its substantive reasonableness, taking into account the totality of the circumstances. United States v. Mendoza–Mendoza, 597 F.3d 212, 216 (4th Cir. 2010). If the sentence is within the applicable Sentencing Guidelines range, it is presumed on appeal that the sentence is substantively reasonable. United States v. Strieper, 666 F.3d 288, 295 (4th Cir. 2012).

## I. The District Court Erred in its Determination of the Appropriate Base Offense Level based on the Quantity of Drugs Attributable to the Appellant.

At his sentencing hearing, the Appellant's presentence report attributed approximately 9 kilograms of cocaine to the Appellant. Appellant objected, and the district court held that the actual amount was somewhere between 3.5 kilograms and 5 kilograms.

As noted above, this Court reviews the district court's calculation of the quantity of drugs attributable to a defendant for sentencing purposes for clear error. United States v. Slade, 631 F.3d 185, 188 (4th Cir. 2011) (quoting United States v. Randall, 171 F.3d 195, 210 (4th Cir. 1999)) (internal quotation marks omitted). Under

this clear error standard, this Court will reverse the district court's finding only if this Court is "left with the definite and firm conviction that a mistake has been committed." United States v. Harvey, 532 F.3d 326, 336-37 (4th Cir. 2008) (quoting *In re Mosko*, 515 F.3d 319, 324 (4th Cir. 2008)) (internal quotation marks omitted).

Pursuant to the Sentencing Guidelines, sentencing courts must consider relevant conduct in calculating a defendant's advisory sentencing range, including "all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). The Sentencing Guidelines make it clear that "[w]here there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance." Id. § 2D1.1 cmt. n.5. This Court has specified, however, that "when the approximation [of drug quantity] is based only upon 'uncertain' witness estimates, district courts should sentence at the low end of the range to which the witness testified," United States v. Bell, 667 F.3d 431, 441 (4th Cir. 2011) (quoting United States v. Sampson, 140 F.3d 585, 592 (4th Cir. 1998)).

When determining facts relevant to sentencing, such as an approximated drug quantity, the Sentencing Guidelines allow courts to "consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its

probable accuracy." U.S.S.G. § 6A1.3(a). Accordingly, "[f]or sentencing purposes, hearsay alone can provide sufficiently reliable evidence of [drug] quantity." United States v. Uwaeme, 975 F.2d 1016, 1019 (4th Cir. 1992); see also Bell, 667 F.3d at 441 (explaining that courts may rely on "hearsay testimony of lay witnesses as to the quantities attributable to a defendant"); United States v. Wilkinson, 590 F.3d 259, 269 (4th Cir. 2010) ("[A] sentencing court may give weight to any relevant information before it, including uncorroborated hearsay, provided that the information has sufficient indicia of reliability to support its accuracy.").

**A. The evidence at trial permitted only three discrete components to determine overall drug quantity, but the district court selected a fourth, without explanation.**

From the testimony presented at trial (the district court did not hear additional testimony at the sentencing hearing), there were three discrete drug quantities roughly attributable to the Appellant – (i) the 2.5 kilograms seized on the day of the Appellant's arrest, (ii) the 0.5 kilograms that Jass testified that the Appellant removed from a television in early May 2013, and (iii) the drug quantity delivered to Jass by the Appellant and another codefendant over the course of about 15 trips to South Carolina, wherein each shipment weighed between 0.255 kilograms and 0.5 kilograms. See D.A. 185 Jury Trial Transcript Volume 1 at 87, 91, 92.

Moreover, while not deterministic, it is also important to note that the jury only

found the Appellant's convicted responsible for a total drug quantity between 500 grams and 5 kilograms, wherein the jury clearly considered the Appellant's relevant conduct to only relate to those drugs that he transported as a courier, and not the additional quantities that the conspiracy may have trafficked through other couriers or the additional amounts from the 15 trips that Jass alleged.

When faced with this scenario, the district court ruled:

> "What I'm going to do is – I think the government is correct. And the government's taken a very conservative approach to get it over 5 kilograms. And I think it's – I think that's been proven by a preponderance of the evidence. What I'm going to do is just bend over backwards though and give him some relief on that, just out of caution, and say that it's at, you know, that it's under – but it's certainly over 3.5 and the 5, so that would give him a 30 point enhancement." See D.A. 248 Sentencing Transcript at 16.

Arguably then, the evidence at trial limited the district court to three discrete determinations regarding drug quantity attributable to the Appellant – (i) the drug quantity attributable to the Appellant was 0.5 kilograms (the tv alone), (ii) the drug quantity attributable to the Appellant was 3 kilograms (the tv and the amount seized on the date of arrest), or (iii) the drug quantity attributable to the Appellant was approximately 6.85 kilograms (the tv, the seized drugs, and the quantity from the additional 15 trips). Accordingly, the district court's arbitrary selection of an unknown drug quantity between 3.5 kilograms and 5 kilograms is inherently unreasonable.

At a minimum, Appellant contends that the district court needed to articulate a specific drug quantity, and if that quantity was "over 5 kilograms", then the district court was obligated to explain why it accepted the drug quantity from the alleged additional 15 trips, when the jury specifically excluded them when it convicted the Appellant of a lesser quantity. See D.A. 132 Jury Verdict. And while the Appellant does not wish to indulge in a lengthy argument about the double jeopardy and other constitutional implications of sentencing based on acquitted conduct, or conduct that was not proven at trial, it bears mentioning now because the distinction at issue is not a trivial one under these circumstances (i.e., base offense level of 28 versus 30).[1]

Furthermore, historically, this Court has reversed and remanded cases where a district court provided an insufficient rationale for an approximated drug quantity, or made no findings at all, and herein, the district court's failure to adequately explain his deviation from the evidence presented at trial requires clarification. U.S. v. Johnson, 943 F.2d 383 (4th Cir. 1991)(The district court's fact-finding procedure was not adequate. Under application note 2 to guideline § 2D1.4, a court may approximate the quantity of a controlled substance where there has been no seizure, but supporting factors that lead to the approximation must be present, and they must be the subject of

[1] For a thorough and recent discussion of the problems of sentencing based on unconvicted conduct, see "Punishment Without Conviction: Controlling the Use of Unconvicted Conduct in Federal Sentencing", Leonard, Gerald and Dieter, Christine, Berkeley Journal of Criminal Law, Volume 17, Issue 2, 2012.

findings.).

## II. The District Court Erred in Denying the Appellant a Minor Role Reduction.

At his sentencing hearing, the Appellant requested a downward adjustment for a minor role, in that he was merely a courier in a much larger conspiracy. The district court denied the request.

As noted above, this Court reviews the district court's factual determinations as to role adjustments for clear error. United States v. Slade, 631 F.3d 185, 188 (4th Cir. 2011) (quoting United States v. Randall, 171 F.3d 195, 210 (4th Cir. 1999)) (internal quotation marks omitted). Moreover, when requesting a downward adjustment under U.S. Sentencing Guidelines Manual §3B1.2 for a mitigating role in the offense, a defendant has the burden of showing by a preponderance of the evidence that she had a mitigating role in the offense. United States v. Akinkoye, 185 F.3d 192, 202 (4th Cir. 1999). A two-level reduction may be made when a defendant is a minor participant, that is, one who "is less culpable than most other participants, but whose role could not be described as minimal." USSG § 3B1.2(b), comment. (n.5).

The "critical inquiry is thus not just whether the defendant has done fewer 'bad acts' than [her] co-defendants, but whether the defendant's conduct is material or essential to committing the offense." United States v. Pratt, 239 F.3d 640, 646 (4th Cir. 2001) (internal quotation omitted). Role adjustments are determined on the basis

of the defendant's relevant conduct. United States v. Fells, 920 F.2d 1179, 1183-84 (4th Cir. 1990).

In the case at bar, the district court held:

> And I can just tell you there's an abundance of evidence showing that he [the Appellant] did not have a minimum role in this … And I know his[the Appellant's] position if you believe his – well, if you believe his position plus saying he knew about the tv transport, it would be a minimum role. Of course, he denied that he knew about any drugs at all. But if you take his position on that, I understand that arguably is a minimum role. But there's just other strong evidence indicating it was more than a minimum role. So as a result of that, I'm going to deny your objection on that. See D.A. 248 Sentencing Transcript at 17.

Based, on the district court's ruling, it is not clear why the request was denied, other than the fact that the Appellant allegedly "knew" about the drugs, which, after a thorough search of the case law, does not appear to be a basis for denying a role reduction. However, to the extent that the issue here became so convoluted that neither the district court nor the Appellant's counsel properly understood each other, then the request could not have been properly denied, and this matter should be remanded to clarify the request and the basis upon which it was denied.

Nevertheless, to the extent that it was clear that the Appellant requested a "two point reduction", it must be noted that there is a significant difference between a minor role adjustment and a minimal role adjustment, and that the Appellant sought the latter and not the former. See D.A. 248 Sentencing Transcript at 4 (Defense counsel requests that that Appellant "given a two point reduction for minimal role").

In the case at bar, there is ample evidence that the Appellant was solely a courier in this conspiracy. At trial, no evidence was presented that the Appellant negotiated drug transactions, recruited persons into the conspiracy, or that he was even allowed to attend "business" meetings. In fact, when one of the agents searched Mendez's telephone, the Appellant was not even named in the contacts of the phone, he was merely listed as "Taxi". See D.A. 185 Trial Transcript Volume 1 at 68.

So given the Appellant's limited role in the conspiracy as a courier, he is technically eligible for a minor role reduction, even if he knew about the drugs that Mendez was carrying, or if he transported Mendez to drug transactions on multiple occasions. So while transporting Mendez and his drugs was a necessary role in this conspiracy, playing a "necessary" role does not definitively prevent that same role from being minor. This principle is readily seen in the wealth of cases where drug couriers receive the benefit of the adjustment, even though their role is necessary to the drug distribution. Second, a criminal participant that commits a minor act is not necessarily precluded from minor role consideration simply because the minor act is repeated. It is true that a court can consider whether a defendant has repeatedly committed an act in making its sentencing determination. United States v. Saenz, 623 F.3d 461, 468 (7th Cir. 2010) (remanding for minor role sentence reconsideration where record indicated that drug courier committed offense on single occasion). But a

defendant's repeated, negligible participation in a conspiracy does not, by itself, doom qualification for a minor role adjustment. Id. (a "drug courier should neither automatically receive nor automatically be precluded from receiving a role reduction.").

However, the "critical inquiry" for a sentencing court, in considering a § 3B1.2 adjustment, is "not just whether the defendant has done fewer `bad acts' than his codefendants, but whether the defendant's conduct is material or essential to committing the offense." Pratt, 239 F.3d at 646 (quoting United States v. Palinkas, 938 F.2d 456, 460 (4th Cir.1991)). That is, the sentencing court must measure the defendant's "individual acts and relative culpability against the elements of the offense of conviction," not merely against the criminal enterprise as a whole. Id. (quoting Palinkas, 938 F.2d at 460) (internal quotation marks omitted). And in the case at bar, it seems apparent that the Appellant was merely a "Taxi"; he was not the only taxi service that the conspiracy used, nor had he been used during the entire length of the conspiracy. See D.A. 185 Trial Transcript Volume 1 at 95. Thus, it appears that the Appellant should have received a 2 point minor role reduction, or at least, have had the district court properly evaluate the whether or not the Appellant merits the reduction under the facts of his case and the case law – neither of which were done at the sentencing hearing that the Appellant received.

## CONCLUSION

Wherefore for the reasons set forth above, the Appellant prays that the judgment in this case be vacated, and that this case be remanded to the district court to make clearer determinations regarding the drug quantity attributable to the Appellant and whether or not the Appellant merits a minor role reduction.

Respectfully submitted this 26th day of August 2014.

TAYLOR LEE & ASSOCIATES, LLC
__/s Jerome Lee__________________
Jerome Lee
Georgia Bar #: 443455

6855 Jimmy Carter Boulevard
Building 2100, Suite 2150
Norcross, Georgia 30071
Telephone: (770) 650-7200
Facsimile: (678) 735-4512
Email: jerome@htlweb.com
Attorneys for the Appellants

**CERTIFICATE OF SERVICE**

I hereby certify that I have this date served a copy of the foregoing Appellant's Brief upon the other counsel of record in the above styled case by filing a copy of the same electronically on the CM/EMF system.

Respectfully submitted this 26th day of August 2014.

TAYLOR LEE & ASSOCIATES, LLC
__/s Jerome Lee__________________
Jerome Lee
Georgia Bar #: 443455

6855 Jimmy Carter Boulevard
Building 2100, Suite 2150
Norcross, Georgia 30071
Telephone: (770) 650-7200
Facsimile: (678) 735-4512
Email: jerome@htlweb.com
Attorneys for the Appellants

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the Appellant's Brief was prepared in the Times New Roman font, size 14, and that there are 3,651 words in the brief.

Respectfully submitted this 26th day of August 2014.

TAYLOR LEE & ASSOCIATES, LLC
__/s Jerome Lee__________________
Jerome Lee
Georgia Bar #: 443455

6855 Jimmy Carter Boulevard
Building 2100, Suite 2150
Norcross, Georgia 30071
Telephone: (770) 650-7200
Facsimile: (678) 735-4512
Email: jerome@htlweb.com
Attorneys for the Appellants